IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

WELLS FARGO BANK, N.A., et al.   §
                                 §
v.                               §   CIVIL ACTION NO.4:09-CV-486-Y
                                 §
AMERICAN GENERAL                 §
LIFE INSURANCE COMPANY           §

ORDER GRANTING MOTION TO REMAND,
DENYING MOTION TO SEVER, AND DECLARING MOTION TO AMEND MOOT

Pending before the Court is the Motion to Sever Claims (doc. #12) filed by defendant West Coast Life Insurance Company ("West Coast"). Also before the Court are Plaintiffs' Motion to Remand (doc. #16) and Motion for Leave to File Second Amended Complaint (doc. #17). Because these motions all deal with the issue of the proper parties to this suit, the Court will consider them together. After review, the Court concludes that diversity jurisdiction does not exist in this case. The Court further concludes that the severance requested by West Coast would not establish diversity jurisdiction. Consequently, the Court will grant the motion to remand and deny the motion to sever. As a result of these rulings, the Court is without jurisdiction to rule on Plaintiffs' motion to amend.


I.  Background

This case involves life insurance policies purchased to be held in trust as investments. Plaintiff Wells Fargo Bank, NA ("Wells Fargo"), acting as trustee, began purchasing the policies

at issue in March 2007. Wells Fargo would purchase a life insurance policy, the policy would name a trust as the sole beneficiary of the policy, and investors would purchase beneficial interests in the trust.

The first such policy was purchased on the life of plaintiff Thomas Cocco ("the Cocco Policy"). Wells Fargo purchased the policy from defendant American General Life Insurance Company ("American General"). Wells Fargo went on to purchase life insurance policies on the life of John Fosmire, who is named as a plaintiff in this case, as well as Harry Esses, Jean Schlessinger, AND Basavaraj Konanahalli (respectively, "the Fosmire Policy," "the Esses Policy," "the Schlessinger Policy," and the "Konanahalli Policy"). These policies were purchased from defendant West Coast.

On May 14, 2009, American General filed suit in a Florida state court seeking to rescind the Cocco Policy. Cocco, as well as Stephen Wechsler, the Wechsler Financial Group, Inc. ("Wechsler Financial "), Kevin Bechtel, A. Ravi Malick, and Life Brokerage Partners, LLC ("Life Brokerage"), were named as defendants. Wechsler is the principal of Wechsler Financial, Bechtel and Malick are principals of Life Brokerage, and all were apparently involved as insurance agents during the solicitation of, and application for, the Cocco Policy. Wechsler, Wechsler Financial, Bechtel, Malick, and Life Brokerage have all joined as plaintiffs in the case before this Court. According to Plaintiffs' pleadings,

2

American General alleges in the Florida suit that these parties, along with Cocco, engaged in fraud and misrepresentation on the application for the Cocco Policy. American General alleges that these parties failed to disclose the fact that the Cocco Policy was being purchased as an investment for third-parties who, as such, are without an insurable interest in Cocco's life.

West Coast has filed similar lawsuits seeking to rescind policies. On June 5, 2009, West Coast filed suit in the United States District Court for the District of New Jersey seeking to rescind the Esses Policy. Wells Fargo, Esses, Wechsler, Wechsler Financial, Bechtel, Malick, and Life Brokerage were named as defendants in the New Jersey suit. Apparently, Wechsler, Wechsler Financial, Bechtel, Malick, and Life Brokerage also acted as insurance agents in the solicitation of, and application for, the Esses Policy. Then, on June 11, 2009, West Coast filed suit in a California state court seeking to rescind the Fosmire Policy. Just as did American General's Florida suit, these suit alleged that the named defendants engaged in fraud and misrepresentation in completing the application for the Esses and Fosmire Policies. West Coast has allegedly threatened to take similar action regarding the Schlessinger and Konanahalli Policies as well.

Wells Fargo, acting as trustee for the trust holding the Cocco Policy, filed suit in the 153rd Judicial District Court, Tarrant County, Texas, against American General on June 12. Wells Fargo

3

sought declarations that neither Cocco nor the agents involved in procuring the Cocco Policy made any misrepresentations to American General, that such policy was not subject to rescission, and argued that American General's attempt to rescind the policy was contrary both to the terms of the policy and Texas law.  Wells Fargo argues Texas law governs the policies at issue in this case as a result of a choice-of-law provision found in each of the policies.

Wells Fargo filed a similar suit, also in the Texas district court, against West Coast on June 16, acting as trustee of the trust holding the Esses Policy.  Similar to its allegations against American General, Wells Fargo contends that West Coast issued the Esses Policy and then attempted to unlawfully rescind or cancel the policy.  West Coast removed the Texas state suit against it to this Court on July 6.  Counsel for West Coast contacted counsel for Wells Fargo by email in an effort to confer about a motion to transfer that West Coast intended to file, seeking transfer of the removed case to the District of New Jersey for consolidation with the suit West Coast had filed there.  But on July 16, Wells Fargo filed a voluntary dismissal of the suit against West Coast pursuant to Federal Rule of Civil Procedure 41(a).

One week after the voluntary dismissal, Wells Fargo filed an amended petition in its Texas state suit against American General, adding claims based on the Esses Policy, the Fosmire Policy, the Schlessinger Policy and the Konanahalli Policy.  Again, these

4

claims allege that American General and West Coast breached the terms of the policies by attempting to rescind them, seek declarations to the effect that the policies were not issued based on misrepresentations made to the insurers, and that the insurers had breached their duty of good faith and fair dealing. Wechsler, Wechsler Financial, Bechtel, Malick, and Life Brokerage were added as plaintiffs. They seek various declarations regarding their involvement in the application for the policies at issue-- essentially contending they made no misrepresentations, seeking to establish their entitlement to commissions, and their right to be reimbursed in the event they are held liable for benefits under the policies. Claims against two of West Coast's agents--Universal Insurance Services, Inc. ("Universal"), and Rosslyn Muriu--were also added.

West Coast again removed to this Court. But this Court lacks diversity jurisdiction over the case, Plaintiffs argue, because the insurance trusts, as plaintiffs, are citizens of Texas, as is defendant American General. Further, both Fosmire, a plaintiff, and Muriu, a defendant, are citizens of California. Finally, plaintiffs Bechtel, Malick, and Life Brokerage are all Florida citizens, as is defendant Universal. West Coast counters that Wells Fargo improperly joined Muriu and Universal and misjoined American General in an attempt to defeat diversity jurisdiction.

After removing to this Court, West Coast filed a motion to

sever the claims against American General from the claims against it (doc. #12). Plaintiffs then filed a motion to remand (doc. #16), based on the alleged lack of complete diversity. Plaintiffs have also filed a motion for leave to file an amended complaint (doc. #17). Plaintiffs argue that the proposed amended complaint clarifies the relationship between the claims against American General and those against West Coast, and demonstrates that Plaintiffs have a reasonable basis for recovery against non-diverse defendants. They also seek, by way of their motion for leave to amend, to add additional, non-diverse defendants, further defeating diversity.

II. Discussion

A. Priority of Motions

Plaintiffs argue that their motions for leave to amend and to remand must be considered before West Coast's motion to sever. According to Plaintiffs, their motion to remand addresses the Court's subject-matter jurisdiction and, therefore, must be addressed first. At first blush, it would seem that Plaintiffs' argument that diversity jurisdiction does not exist and West Coast's argument that the claims against it and against American General should be severed are opposite sides of the same coin. That is, whether diversity jurisdiction exists turns, at least in part, on whether the claims against West Coast and American General

6

can be maintained in the same suit.

But West Coast argues not that American General is an improper party, rather, that the claims against it have been misjoined with the claims against American General. West Coast relies, chiefly, on *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353 (11th Cir. 1996) in making this argument. In *Tapscott*, the United States Court of Appeals for the Eleventh Circuit concluded that just as the **improper joinder** of a defendant against whom the plaintiff cannot recover will not defeat diversity jurisdiction, neither will the **misjoinder** of parties under Rule 20. *See Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996) *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000). That is, plaintiffs may not misjoin claims under Rule 20 in order to include a non-diverse defendant and thereby defeat diversity. *See id.*

As discussed below, whether the United States Court of Appeals for the Fifth Circuit recognizes *Tapscott*-type misjoinder is not entirely clear. But whatever the state of *Tapscott*-type misjoinder in this circuit, it is clear that *Tapscott* does not involve simply a misjoinder analysis. Under *Tapscott* "mere misjoinder" is not improper joinder. *Tapscott*, 77 F.3d at 1360. Instead, the connection between the joined parties and claims must be "so tenuous as to justify disregarding the citizenship of the joined parties." *Bright v. No Cuts, Inc.,* No. 03-640, 2003 U.S. Dist.

LEXIS 19123, at *20 (E.D. La. Oct. 27, 2003). That is, the joined parties and claims must be without a "palpable connection,"[1] causing the joinder to be "egregious,"[2] "totally unsupported"[3] or a "purposeful attempt to defeat removal." *Bright*, 2003 U.S. Dist. LEXIS 19123, at *21 (quoting *Conk v. Richards & O'Neil, LLP*, 77 F. Supp. 2d 956, 971 (S.D. Ind. 1999)). Thus, while both West Coast's motion to sever and Plaintiffs' motion to remand call upon the Court to evaluate what parties and claims are properly joined in this suit, the misjoinder inquiry under *Tapscott* that might be done as part of the motion to remand is much broader and forgiving to Plaintiff than the analysis to be done under the joinder rules with regard to the motion to sever. *See id.* at *21-22. Given this, and the general rule that a court must address the issue of subject-matter jurisdiction before any other[4], the Court will take up Plaintiffs' motion to remand before West Coast's motion to sever.

The Court need not, however, take up Plaintiffs' motion to amend before West Coast's motion to sever. Plaintiffs argue, under the authority of *Cobb v. Delta Exports, Inc.*, that the Court may grant their motion to amend without addressing the issue of

---

[1]  *Bright,* 2003 U.S. Dist. LEXIS 19123, at *21.

[2]  *Tapscott*, 77 F.3d at 1360.

[3]  *Etheridge v. Liberty Mut. Ins. Co.*, No. 3:8CV004-SA-DS, 2008 WL 4057072, at *2 (N.D. Miss. Aug. 26, 2008).

[4]  *Bader v. Atlantic Int'l, Ltd.*, 986 F.2d 912, 914 (5th Cir. 1993) ("Prior to reviewing the merits of any case, this Court must be satisfied that it has subject matter and appellate jurisdiction.").

improper joinder.   In *Cobb*, the Fifth Circuit explained that when, after removal, a plaintiff seeks to join additional defendants that would destroy diversity jurisdiction, the doctrine of "fraudulent" or "improper" joinder has no application.   *See Cobb v. Delta Exports, Inc.*, 186 F.3d 675, 677-78 (5th Cir. 1999).   This is so because post-removal joinders are subject to approval by the district court, and a district court would never allow an improper joinder.   *See id*.   But in this case the Court is not simply dealing with a motion to amend to add a non-diverse party.   The Court is also faced with a motion to remand, which has raised the issue of improper joinder.   More broadly, as noted, a court must be satisfied that it has subject-matter jurisdiction before dealing with any other matters, and, subject to an exception not applicable here, "federal courts base decisions about subject matter jurisdiction after removal on the plaintiff's complaint as it existed at the time that the plaintiff filed the removal petition." *Kidd v. Southwest Airlines Co.*, 891 F.2d 540, 546 (5th Cir. 1990). Thus, the Court will first address the motion to remand and the motion to sever in order to assess what parties and claims are properly before the Court.   The Court will then address the motion to amend.

B.  Discussion

    1.  Motion to Remand

      a.  Standards for Removal and Remand

Title 28 U.S.C. § 1441(a) provides "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending."  When an action is removed based on diversity jurisdiction, the removing party must establish diversity and that the amount in controversy satisfies the jurisdictional amount set out in 28 U.S.C. § 1332.  *See* 28 U.S.C. § 1332; *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 365 (5th Cir. 1995) ("[T]he defendant bears the burden of establishing federal jurisdiction over the state-court suit.").

According to Plaintiffs, diversity jurisdiction does not exist in this case.  They argue that both the trusts and American General are citizens of Texas, that both Fosmire and Muriu are citizens of California, and that Bechtel, Malick, Life Brokerage and Universal are all citizens of Florida.  In its notice of removal, as well as its briefing of the motions to remand and to sever, West Coast argues that the claims against it have been misjoined with the claims against American General, and that Muriu and Universal have

10

been improperly joined.

The improper joinder of a defendant who is a citizen of the forum state or to defeat diversity cannot prevent removal. *See Illinois C. R. Co. v. Sheegog*, 215 U.S. 308, 316 (1909); *see also Sid Richardson Carbon & Gasoline Co. v. Interenergy Resources, Ltd.*, 99 F.3d 746, 751 (5th Cir. 1996). A party raising a claim of improper joinder bears a heavy burden, in that it must demonstrate that there has been outright fraud in the plaintiff's pleading of jurisdictional facts or that there is no reasonable basis for plaintiff to recover from the non-diverse defendant. *See Smallwood v. Illinois Central R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004); *see also Sid Richardson Carbon & Gasoline Co.*, 99 F.3d at 751. Generally, a district court engages in "a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant." *Id.* But in cases "in which a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder . . . the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry." *Id.* Such an inquiry "is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant," *id.* at 573-74, and a court must be careful not to "pretry[] a case to determine removal jurisdiction." *Cavallini v.*

11

*State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 263 (5th Cir. 1995) (internal citation omitted).

### 2. Analysis

#### a. American General

West Coast insists that it is a wholly unrelated to American General and that the facts giving rise to the claims against each are completely separate.  Thus, citing *Tapscott*, West Coast argues that the claims against itself and the claims against American General have been misjoined, and that American General's citizenship should be ignored.

The Court first notes that the parties seem to address the impact of American General's Texas citizenship on diversity in relation to the citizenship of the trusts.  But under Texas law, "the term 'trust' refers not to a separate legal entity but rather to the fiduciary relationship governing the trustee with respect to the trust property." *Huie v. DeShazo*, 922 S.W.2d 920, 926 (Tex. 1996).  Such an "[a]rtificial or 'invisible' legal creature[ is] not a citizen[] of any State." *Navarro Savings Association v. Lee*, 446 U.S. 458, 461 (1980).  Rather, the citizenship of a trust, for diversity-jurisdiction purposes, is determined by the citizenship of its trustee.  *See id.* at 462-63 (citizenship of a trust is determined by the trustee's citizenship); *see also Bass v. Int'l Brotherhood of Boilermakers*, 630 F.2d 1058, 1067 n.17 (5th Cir.

12

1980) ("The citizenship of unincorporated associations for diversity purposes is that of each of its trustees."). Having reviewed the pleadings and the notice of removal, the Court notes that Wells Fargo is a national banking association formed under the laws of South Dakota with its principal office in Sioux Falls, South Dakota. (Notice of Removal, doc. #1, at p.5, ¶10.) Thus, American General's Texas citizenship does not defeat diversity.

The true issue regarding American General's citizenship is that, as a citizen of Texas, American General is a citizen of the state in which this suit was filed. If federal jurisdiction is based on diversity of citizenship under 28 U.S.C. § 1332, an action is "removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which [the] action is brought." 28 U.S.C. § 1441(b). But just as with the improper joinder of a defendant to defeat diversity, the improper joinder of a defendant who is a citizen of the forum state cannot prevent removal. *See Sheegog*, 215 U.S. at 316.

As previously noted, in *Tapscott*, the Eleventh Circuit concluded that the misjoinder of a defendant to defeat diversity jurisdiction is no more permissible than the improper joinder of a non-diverse defendant against whom there can be no recovery. *See Tapscot*, 77 F.3d at 1360. There is, however, not a case from the Fifth Circuit applying or expressly adopting *Tapscott*-type misjoinder. Indeed, as one district court has pointed out, the

13

Fifth Circuit's opinion in *Smallwood*--an en banc opinion which post-dates *Tapscott* and proclaimed to announce the definitive test for improper joinder--did not mention *Tapscott*-type misjoinder. *See Schwartz v. Chubb & Sons, Inc.,* No. 2:05-CV-6885-SAF-JK, 2006 U.S. Dist. LEXIS 18174, at *15-17 (E.D. La. Apr. 11, 2006) (Fitzwater, C.J.).

Even so, the Fifth Circuit has recognized the validity of the conclusion in *Tapscott* in dicta.[5]  More significantly, the Fifth Circuit has relied on the reasoning of *Tapscott* in allowing removal where it would otherwise be barred.  In *Crockett v. R.J. Reynolds Tobacco Co.,* the Fifth Circuit dealt with a fact pattern in which a case was initially nonremovable because one defendant was a citizen of Texas, the state in which the suit was brought.  436 F.3d 529, 532 (5th Cir. 2006)  A Texas court ordered the claims against that defendant severed, and the remaining defendants removed the case to federal court.  *Id.*  The plaintiffs argued that the removal violated the "voluntary-involuntary rule," under which "an action nonremovable when commenced may become removable thereafter only by the voluntary act of the plaintiff." *Id.*

---

[5] *In re Benjamin Moore & Co.,* 309 F.3d 296, 298 (5th Cir. 2002) (stating that, as part of its jurisdictional determination, a district court should consider whether misjoinder of a non-diverse party defeats diversity jurisdiction and citing *Tapscott*); *see also In re Benjamin Moore & Co.,* 318 F.3d 626, 630-31 (5th Cir. 2002) (concluding that appellate jurisdiction to review the district court's ruling on misjoinder was lacking while noting that such conclusion did not "detract[] from the force of the *Tapscott* principle that fraudulent misjoinder of plaintiffs is no more permissible than fraudulent misjoinder of defendants to circumvent diversity jurisdiction").

(quoting *Weems v. Louis Dreyfus Corp*., 380 F.2d 545, 547 (5th Cir. 1967)).  Rejecting this argument, the Fifth Circuit noted that fraudulent or improper joinder[6] is a "long recognized exception to the voluntary-involuntary rule." *Id*.  Noting that Texas had adopted the same joinder standards as announced in Rule 20(a), the Fifth Circuit cited *Tapscott* in concluding that misjoinder of claims, as well as improper joinder, is an exception to the voluntary-involuntary rule, stating that if the requirements for joinder prescribed by Rule 20(a) are not met, "joinder is improper even if there is no fraud in the pleadings and the plaintiff does have the ability to recover against each of the defendants." *Id*. at 533. Moreover, several district courts within the Fifth Circuit have recognized the validity of *Tapscott*-type misjoinder. *See Willingham v. State Farm Ins. Co.*, No. 2:09-CV-59-SA-SAA, 2009 U.S. Dist. LEXIS 76639, *4-*7 (N.D. Miss. Aug. 27, 2009); *Accardo v. Lafayette Ins. Co.*, No. 06-8568, 2007 U.S. Dist. LEXIS 6859, *8-*15 (E.D. La. Jan. 30, 2009).  In light of the foregoing, the Court concludes that *Tapscott*-type misjoinder, just as the improper joinder of a defendant, is a basis for disregarding the citizenship

---

[6] In *Crockett*, the court uses the term "fraudulent" to refer to the joining of defendants against whom plaintiff cannot recover and the use of outright fraud in the pleadings, *see Crockett*, 436 F.3d at 532, and uses the term "improper" in connection with the improper joining of defendants under Rule 20(a). *See id*. at 533.  For consistency with the remainder of this order, the Court refers to the former concept as "improper joinder" and the latter as misjoinder.  Indeed, this is now the preferred terminology of the Fifth Circuit. *See McDonal v. Abbott Labs*, 408 F.3d 177, 180 n.1 (5th Cir. 2005) (noting the Fifth Circuit's adoption of the term "improper joinder").

of the misjoined party.

To be clear, under *Tapscott* "mere misjoinder" is not tantamount to improper joinder. *Tapscott*, 77 F.3d at 1360. As noted above, the connection between the joined claims must be "so tenuous as to justify disregarding the citizenship of the joined parties." *Bright*, 2003 U.S. Dist. LEXIS 19123, at *20. The joined parties and claims must be without a palpable connection, causing the joinder to be egregious, totally unsupported or a purposeful attempt to defeat removal. *See Bright*, 2003 U.S. Dist. LEXIS 19123, at *21.

A federal court applies state joinder law in assessing whether there has been a misjoinder and whether such misjoinder rises to the level of improper joinder. *See Accardo*, 2007 U.S. LEXIS 6859, at *12–*15 (noting the different approaches on this point and concluding that because claims are joined under state joinder law the propriety of such joinder should be evaluated under state joinder law). Texas Rule of Civil Procedure 40(a) provides in relevant part:

> All persons may be joined in one action as defendants if
> there is asserted against them jointly, severally, or in
> the alternative any right to relief in respect of or
> arising out of the same transaction, occurrence, or
> series of transactions or occurrences and if any question
> of law or fact common to all of them will arise in the
> action."

Tex. R. Civ. P. 40(a). Under this rule, three requirements must be met in order to join claims against multiple defendants in one

action.  The plaintiffs must assert a right to joint, several, or alternative relief against the defendants.  *See id.*, *see also Abel v. Surgitek*, 975 S.W.2d 30, 38-39 (Tex. App.--San Antonio 1998) *reversed on other grounds by* 997 S.W.2d 598; 1 William V. Dorsaneo III, Texas Litigation Guide § 12.05[1] (2009).  The right to relief must be "in respect of or aris[e] out of the same transaction, occurrence, or series of transactions or occurrences."  *See* Tex. R. Civ. P. 40(a); *see also Surgitek*, 975 S.W.2d at 38-39.  Finally, there must be a "question of law or fact common to all of" the defendants.  *See* Tex. R. Civ. P. 40(a); *see also Surgitek*, 975 S.W.2d at 38-39.

Although neither party addresses the first requirement imposed by Rule 40, the Court notes that none of the plaintiffs who seek relief against American General seek recovery from any other defendant on the same claim.  That is, no plaintiff seeks to hold American General jointly or severally liable with, or in the alternative to, any other defendant.  Rather, Cocco, Wechsler, Wechsler Financial, Bechtel, Malick, Life Brokerage and Wells Fargo seek declaratory relief and recovery from American General based on the Cocco Policy.  They do not assert that West Coast, or its agents Muriu and Universal, can be held liable in any way regarding the Cocco Policy.  Nor do these plaintiffs seek any declaratory relief from West Coast, Muriu, or Universal regarding the Cocco Policy.  The same is true of the Esses, Fosmire, Schlessinger, and

Konanahalli Policies--the declaratory and other relief sought by Fosmire, Wechsler, Wechsler Financial, Bechtel, Malick, Life Brokerage, and Wells Fargo regarding these policies is sought only from West Coast, Universal, and Muriu.   Additionally, Life Brokerage's claim for commissions is directed solely against Universal.

The pleadings fail to support Plaintiffs' position that the claims against American General and the claims against West Coast arise out of the same transaction, occurrence, or series of transactions or occurrences as well.   This is the focus of the parties' briefing on the misjoinder issue.   Just as do federal courts, Texas courts apply the logical-relationship test to determine if claims arise out of the same transaction, occurrence, or series of transactions or occurrences. *See Surgitek*, 975 S.W.2d at 38 (citing *Moore v. New York Cotton Exch.*, 270 U.S. 593, 610 (1926)).   Plaintiffs argue that the claims against West Coast and American General are properly joined because the two companies "have carried out substantially identical strategies for substantially the same purpose."   According to Plaintiffs' allegations, both American General and West Coast have undertaken a campaign to rescind policies with terms unfavorable to them.   But there are no factual allegations that even suggest that American General and West Coast did not make the decision to rescind certain policies wholly independently of each other.   Plaintiffs complain

18

that West Coast and American General have "employed a common litigation strategy . . . by hiring the same counsel" but the retention of the same counsel and that counsel's decision to approach similar issues presented by similar clients in a similar fashion has no bearing on whether the claims against each company arise out of the same transaction or occurrence.  There are simply no factual allegations to suggest concerted conduct, agreement, conspiracy, or any other joint action either between the two companies or by the companies via their shared counsel.

Finally, Plaintiffs allege that Wechsler, Wechsler Financial, Bechtel, Malick, and Life Brokerage were appointed by both American General and West Coast as agents in Texas.  And these parties were involved in the issuance of policies involved in this suit on behalf of both American General and West Coast.  But Plaintiffs have not argued that Wechsler, Wechsler Financial, Bechtel, Malick, and Life Brokerage were the part of some common scheme or collaboration by American General and West Coast.  To the contrary, it appears to be happenstance that these agents represented both American General and West Coast, and their representation of one was wholly independent of their representation of the other.  "To arise from the same transaction, at least some of the facts must be relevant to both claims."  *Blalock Prescription Ctr., Inc., v. Lopez-Guerra*, 986 S.W.2d 658, 663 (Tex. App.--Corpus Christi 1998, no pet.).  There is nothing in Plaintiffs' pleadings or arguments

19

to show that any factual issues will bear on both the claims against West Coast and against American General.

Mere misjoinder, however, is not enough to support a finding of improper joinder. But having reviewed the pleadings in light of the arguments, the Court concludes that there is such a lack of a palpable connection between the claims against American General and those against West Coast as to warrant disregarding American General's citizenship. Despite the similarity of the conduct in which both American General and West Coast have allegedly engaged, there is simply no factual connection between the claims against them. The connection is not just tenuous, it is nonexistent. Particularly in light of the procedural history of this case, which appears to include efforts by Wells Fargo to avoid federal jurisdiction, the Court concludes that the joinder of American General was misjoinder tantamount to improper joinder under *Tapscott.*

b.  Rosslyn Muriu

West Coast also argues that Muriu was improperly joined by Plaintiffs to defeat diversity jurisdiction. Wells Fargo, as trustee of the trusts which hold the Fosmire and Schlessinger Policies, seeks declaratory relief under the Texas Declaratory Judgment Act against Muriu. Specifically, Wells Fargo seeks a declaration that Muriu acted as West Coast's agent in issuing the

Fosmire and Schlessinger Policies; that, as West Coast's agent, Muriu's knowledge is imputed to West Coast; and that if the Fosmire or Schlesinger Policy is rescinded based on Muriu's misrepresentations or based on information of which Muriu was aware, Muriu is liable to the policy's beneficiary for the full death benefit. West Coast insists that these declarations do not amount to a reasonable basis for recovery against Muriu.

West Coast alleges, in its suit pending in the District of New Jersey, that Muriu engaged in misrepresentations to it as a basis for rescinding the Fosmire Policy. West Coast argues that despite this, the declaration sought by Plaintiffs relating to Muriu's alleged misrepresentations do not state a basis for recovery. This is because, according to West Coast, there is no basis in Texas law for allowing Plaintiffs to recover against an insurance agent for misrepresentations made to the insurer.

West Coast argues that Texas law holds that an insurer's agent owes no duty to the insured. Thus, a insured cannot maintain a claim against the insurer's agent for negligence or breach of the duty of good faith and fair dealing. *See Dagley v. Haag Eng'g Co.*, 18 S.W.3d 787, 790-91 (Tex. App.--Houston [14th Dist.] 2000, no pet.) (discussing the role of privity in a claim by an insured for negligence or breach of duty). Relatedly, West Coast argues that there must be a valid cause of action underlying Wells Fargo's claim for declaratory judgment.

Citing the Texas Declaratory Judgment Act, Wells Fargo argues that a cause of action is not necessary to support a claim for declaratory relief, but instead such relief need only be based on a justiciable controversy.  Because the Texas Declaratory Judgment Act is procedural in nature, it does not govern a declaratory-judgment action in federal court.  *See Tex. Mut. Ins. Co. v. Wood Energy Group, Inc*., No. A-07-CA-530 LY, 2009 U.S. Dist. LEXIS 51854, at *8-*9 n.2 (W.D. Tex. Jan. 16, 2009).  Instead, under the Erie doctrine, federal courts apply federal procedural law, including the federal Declaratory Judgment Act.  *Id*.  The federal Declaratory Judgment Act is remedial only , and a claim under that act litigates the defendant's underlying cause of action against the plaintiff.  *See Collin County v. Homeowners Ass'n for Values Essential to Neighborhoods*, 915 F.2d 167, 170, 171 (5th Cir. 1990).

And a plausible cause of action against Muriu does underlie the claim for declaratory relief.  West Coast's arguments that an insurance agent owes no duty to an insured notwithstanding, at least one court has recognized that, under the common-law duties imposed by Texas law, an insured may recover against an insurance agent in the event the insurer rescinds a policy based on the agent's misrepresentations.  *See Certain Underwriters at Lloyd's v. A&D Interests, Inc*., 197 F. Supp. 2d 741, 752-53 (S.D. Tex. 2002).  Regardless, Wells Fargo has not alleged a claim for negligence but

22

instead claims that Muriu made misrepresentations in the application process for the Fosmire and Schlessinger Policies and failed to convey to West Coast that the policies were purchased as investments during the application process.  An insurance agent may be held liable for misrepresentations made to the detriment of an insured.  *See State Farm Fire & Cas. Co. v. Gros*, 818 S.W.2d 908, 912-13 (Tex. App.--Austin 1991, no writ); *see also May v. United Servs. Assoc*., 844 S.W.2d 666, 669-70 (Tex. 1992) (discussing cases in which liability was imposed on an insurance agent because "the agent induced the [insured] to rely on his performance of the undertaking to procure insurance, and the [insured] reasonably, but to his detriment, assumed that he was insured against the risk that caused his loss"); *Nast v. State Farm Fire & Cas. Co.*, 82 S.W.3d 114, 124 (Tex. App.--San Antonio 2002, no pet.) (plaintiffs who sought insurance could maintain suit against their agent for negligently misrepresenting that they were not eligible for FEMA flood insurance); *French v. State Farm Ins. Co.*, 156 F.R.D. 159, 162 (S.D. Tex. 1994) (noting that, under Texas law, an insurance agent that exceeds his authority may be held personally liable for his conduct, including misrepresentations made to an insured).

By way of its supplemental briefing (docs. #38 & 43), West Coast also argues that Fosmire's claims have been improperly joined and that his citizenship should be disregarded.  Again, West Coast argues that there is no valid cause of action underlying Fosmire's

request for declaratory relief.  West Coast points to a disclosure statement and consent form that informs Fosmire a life insurance policy is being purchased on his life to be held in trust for the benefit of the trust--and ultimately investors--and that "[n]either Fosmire, nor [Fosmire's] spouse, nor their respective estates, designees, heirs, successors or assigns will have any rights, claims, interests, powers or privileges in respect of the [insurance policy] or the trust, including, without limitation, any rights to death benefit proceeds paid with respect to such policies."  (Pl.'s Mot. to Remand App. at 11.)  Based on this language, West Coast argues that Fosmire has waived any right to seek to recover based on the policy on his life.

But Fosmire does not seek to recover based on the policy. Instead, Fosmire seeks a declaration that the representations he made to West Coast in procuring the policy were either accurate or immaterial to the application process.  Fosmire seeks this declaration to protect himself from liability in the event that the policy is rescinded.  Indeed, West Coast has alleged, in its suit filed in a California state court, that the Fosmire Policy is "void ab initio" because of material misrepresentations on the application for the policy. (West Coast's Resp. to Mot. for Leave, doc. #30, at 55-56, 61-62.)  Thus, an actual controversy, predicated on West Coast's allegation that Fosmire engaged in fraud in securing the Fosmire Policy, exists between Fosmire and West

24

Coast.

###### c.   Universal

West Coast also argues that Universal was improperly joined.
Similar to the claims against Muriu, Plaintiffs seek a declaration
that Universal was acting as West Coast's agent in connection with
the Esses Policy, and that if that policy is rescinded based on
Universal's misrepresentations Universal must pay the full death
benefit, and reimburse Bechtel, Malick, and Life Brokerage for any
commissions they received as brokers that they are forced to repay.

But Plaintiffs have not shown that a justiciable controversy
underlies their claim for declaratory relief.  Unlike the situation
with Muriu, although West Coast has sought to rescind the Esses
Policy in a suit before the District for New Jersey, West Coast has
not alleged misrepresentation by Universal as a basis for that
rescission. Nor is there any allegation in this suit that Universal
made misrepresentations during the application process.  To the
contrary, in the complaint filed in the District for New Jersey,
West Coast alleges that two individual agent--Wechsler and Malick--
made misrepresentations. (Notice App. at 9.)  Universal is never
mentioned in the complaint.  Plaintiffs do not explain, in either
their pleadings or briefing, how Universal could be held liable for
Wechsler and Malick's misrepresentations.  Thus, Universal's
liability to pay death benefits or to reimburse commissions remains

too speculative to support Plaintiffs' claim for declaratory relief.

Plaintiff Life Brokerage asserts a breach-of-contract claim against Universal for broker commissions. Plaintiffs assert that Universal owes Life Brokerage commissions for the sale of insurance policies, albeit polices unrelated to the trusts at issue in this case. But West Coast alleges that Universal is not licensed to sell insurance in the state of Texas. West Coast has produced evidence in support of this allegation--a document that appears to be a results page of an electronic search of the Texas Department of Insurance's records indicating that no license for Life Brokerage Partners was found. And Plaintiffs do not attempt to controvert the fact that Life Brokerage is not licensed in Texas. Under Texas law, unless licensed by the Department of Insurance, a partnership may not "solicit or receive an application for insurance in [Texas or] aid in the transaction of the business of an insurer." Tex. Ins. Code. Ann. § 4001.101 (Vernon 2009). Nor may an unlicensed partnership in Texas "accept from any person a commission or other valuable consideration for a service performed . . . as an agent in [Texas]." *Id.* at 4005.053. Thus, Life Brokerage has no viable claim against Universal. Plaintiffs point out that Life Brokerage's principals, Bechtel and Malick, are licensed in Texas. But Bechtel and Malick have not made a claim against Universal for breach of contract.

26

      d.   Conclusion   Regarding   Improper   Joinder   and
              Jurisdiction

Having   reviewed   the   pleadings,   arguments,   and,   where
appropriate,   supporting   evidence,   the   Court   concludes   that   the
claims against American General have been misjoined with the claims
against West Coast, Universal, and Muriu, and that such misjoinder
amounts to improper joinder.   American General's citizenship will,
therefore,   be ignored in evaluating diversity jurisdiction and the
propriety of West Coast's removal of this case.   The Court further
concludes   that   Plaintiffs   have   stated   no   plausible   basis   for
recovery against Universal, and that the trusts have no citizenship
independent   of   their   trustee   Wells   Fargo.     Consequently,   the
citizenship of Universal and the trusts will be ignored for the
purposes   of   assessing   whether   diversity   jurisdiction   exists.
Additionally

But Plaintiffs have stated a justiciable controversy regarding
Muriu.     And   because   Muriu,   as   a   defendant,   and   Fosmire,   as   a
plaintiff, are both citizens of the State of Texas, her presence in
this case defeats diversity jurisdiction.


    2.   Motion to Sever

A district court may dismiss non-diverse defendants under Fed.
R. Civ. P. 21 in order to maintain diversity jurisdiction.   *See*
*Ralli-Coney, Inc. v. Gates*, 528 F.2d 572, 575-76 (5th Cir. 1976).
In its motion to sever, West Coast seeks to have the claims against

American General severed from this case and, as discussed above, the Court has concluded that American General has been not only misjoined, but improperly joined. *See Crockett*, 436 F.3d at 533 (noting that Texas, in Tex. R. Civ. P. 40(a), has adopted joinder standards equivalent to those stated in Fed. R. Civ. P. 20(a)); *see also Accardo*, 2007 U.S. Dist. LEXIS 6859 at *12-*13 (noting that, under *Tapscott*, some courts have declined to address whether state or federal joinder rules apply where the state rule at issue is sufficiently similar to the federal rule); *Surgitek*, 975 S.W.2d 39 (noting that Tex. R. Civ. P. 40 and Fed. R. Civ. P. 20 are "equivalent").

But even if the severance were granted, it would not achieve the result for which West Coast filed the motion—maintaining federal jurisdiction. Even if the claims against American General were severed from this case, the claims against Muriu would remain. As discussed above, Muriu defeats diversity. And West Coast has not sought severance of the claims against her. Thus, the motion to sever is DENIED.

### 3.   Motion to Amend

Having determined that complete diversity does not exist in this case and that severance to maintain jurisdiction is not appropriate, the Court has no jurisdiction to rule on the motion to amend.

28

III.  Conclusion

The Court concludes that Plaintiffs have stated a plausible claim against defendant Rosslyn Muriu and that her presence in this case defeats diversity jurisdiction.  The Court further concludes that West Coast's requested severance would not establish diversity jurisdiction.

Accordingly, Plaintiffs' motion to remand is GRANTED, West Coast's motion to sever is DENIED, and the Court lacks jurisdiction to rule on the motion to amend.

SIGNED: November 18, 2009.

_Terry R. Means_

TERRY R. MEANS
UNITED STATES DISTRICT JUDGE